May it please the Court, my name is Stacey Escobar-Machuro. Alongside my co-counsel and on behalf of the University of Idaho College of Law, we represent petitioner Mr. Sergio Cruz Barrera. Your Honors, we've reserved five minutes for a rebuttal. At the heart of this case, Your Honors, is a merits hearing in which the immigration judge failed to give reasonable consideration to key evidence pertaining to Mr. Cruz Barrera's claim, a human being who was gruesomely gang-raped and beat to the verge of death. We offer two separate grounds to support a grant of the petition for review and a remand with the Board's decision. First, the Board violated this circuit's precedent regarding expert evidence and violated its own standard of review with post hoc rationalizations. Second, the Board erred in its analysis on whether El Salvador was unable or unwilling to protect Mr. Cruz Barrera by exclusively focusing on the failed prosecution of one of the three attackers of Mr. Cruz Barrera. Can I jump you to the second issue? It seems to me that this case is more about the inability of the Salvadoran government to control these actors as opposed to their willingness. Do you agree with that? Yes, Your Honor. What is your key evidence for the inability of the government to control these actors? Your Honor, the fact that after they did the arrest, they further did not show up to the court hearing pertaining to this attacker, which he was then released. No one showed up to this court hearing. Further, they did not provide protection to the eyewitness, Mr. Ernesto, who then did not show up as well. But didn't both those individuals, the victim, your client, and the eyewitness, they left the country at the time? So what was the El Salvadoran government going to do in terms of prosecution? Your Honor, Mr. Cruz Barrera and we don't know for certain, but Ernesto did flee the country. However, they fled for their safety. The two police officers that did the arrest, took the report, did not show up to that court hearing to testify. With what evidence were they going to prosecute the attacker? The fact that they committed, that they went and arrested the sealant. They took the report. They had gone to the hospital and they took the report, but no one then showed up to the court hearing. Would that have been appropriate under the rules of evidence or just how court proceedings work in El Salvador? Do we know that? We are uncertain, Your Honor. However, it is the norm for police officers to go and testify if they are able to. However, there was no appearance on behalf of the police officers. What do we make of the fact that Antonio is now deceased? Do I have the name wrong? So the attacker was Tono or Antonio, and so your client's brother killed him. Correct. Right, so what do we make of that in terms of the risk of future persecution? Your Honor, that was an example of future persecution. After they had arrested the attacker and the attacker was released, he further continued threats against the family, which led to this confrontation between Petitioner's brother, where he self-defended himself and had to kill the attacker. That is one of three of the attackers. But in terms of inability, so the El Salvadorian government attempted to prosecute the brother for killing Antonio, and then ultimately he prevailed in a self-defense claim. So didn't that show a willingness by the El Salvadorian government to exercise the rule of law in these cases? Your Honor, there's no bright-line rule as to, like, how far the government has to go to protect the government. Some ability to protect Mr. Cuspera does not mean that they were able to protect. So the arrest, the initial arrest, does not show that he was, that the El Salvadorian government was willing to protect him and able to protect him fully. After this second incident in which the judicial system did allow his brother to claim self-defense and he was released, that is a separate example. Dr. Borman discusses in his expert report how corruption in El Salvador is not black and white. Therefore, that was an example, and the immigration judge failed to see that as evidence of future persecution rather than an example of the judicial system working in El Salvador. So this court in Hernandez said that the IG wasn't required to specifically address every aspect of Dr. Borman's declaration. How do you overcome that? Yes, Your Honor. However, in Hernandez they held that that report was duplicative and they held that it was not highly probative or potentially dispositive, which is why they held that the immigration judge did not need to address it. I hear Dr. Borman was speaking in generalities, wasn't he? He didn't specifically address this situation with this family and the competing family. There seems to be something going on back in the native country with these families that I'm not sure I understand. Your Honor, Dr. Borman does discuss explicitly on page 1125 of the record. He devotes about two and a half pages to Mr. Cruz Barreras' claim. But all he can say is that Mr. Cruz Barreras' claim sort of fits the profile because he hasn't interviewed him. He doesn't know any of the family members. So all he can say is it sort of fits the pattern and here are general consequences. Here's a profile of some awful things that happened in El Salvador. So what should the IJ have done with this report? Your Honor, the IJ should have mentioned it. It came up pursuant to Yang Rongzhao v. Holder, an immigration judge has a duty to consider the entirety of the evidence. But what should the IJ have done with this report? What would your side have liked him to have done with this report? Your Honor, the immigration judge should have addressed the evidentiary weight pertaining to Dr. Borman and used it in its analysis. It should have discussed it in its decision on whether El Salvador was. Dr. Borman has testified in hundreds of these cases, and I suspect that much of what he filed here has been repeated elsewhere. So it may well be that the IJ, certainly somebody at the BIA, may be very, very familiar with Dr. Borman's thesis, with the general tenor of his testimony, and would know the fact that he is not able to corroborate any of the particular facts in this case. Has Dr. Borman's report been mentioned by the BIA before? Yes, Your Honor, it has been. And in what context did it mention it? In different contexts, in different cases. Did it credit it in other contexts? Did it dismiss it? Yes, pertaining to some cases, yes, and in others, no. However, in this record, there's no indication in the immigration judge's behalf that he found these issues with Dr. Borman's report. The issue, it was raised three times in the record on three different days, May 31st, June 7th, and July 17th. And the back and forth was whether it would be admitted due to timeliness, not any issues regarding the credibility of Dr. Borman's report. Ultimately, it was admitted on the last day. However, the immigration judge stated that he would go back and decide on the evidentiary weight. He quote said, and so we'll address that at the end. However, he never did. Pursuant to Yang Rong Zhao v. Holder, an immigration judge has a duty to consider the entirety of the evidence, and if there is indication that it has not done so, and that evidence could have changed the outcome, then it warrants remand. Here, the indication that the immigration judge stated that he would go back and address the issue, the evidentiary issue regarding Dr. Borman's report, but he never went back, and there is no mention of it, shows that he did not consider the entirety of the evidence. Furthermore. I'd like to go back to the unwilling or unable to protect. So IJ's decision was initially issued orally. Is that right? Or was it only issued orally? Orally. Okay. All right. I'm looking at on page 233 of the record where the judge is addressing the Cruz Barrera, and he says, so, sir, I've denied your application. I found that the police and the courts were at least in part able or willing to protect you. What are we supposed to do with that? What are we supposed to do in part? How much of a part? We don't know, Your Honor. He did not discuss it. Dr. Borman's report goes a step further than these 800 pages of country condition reports that the immigration judge refers to that he has considered. Dr. Borman's report goes a step further as it does explicitly speak about Mr. Cruz Barrera's claim. As I mentioned, he devotes over two and a half pages pertaining to Mr. Cruz Barrera's claim. He specifically states, quote, it is my professional opinion that Mr. Cruz Barrera would be at high and predictable risk of egregious physical harm and death if returned to El  It's undeniable that in his report Dr. Borman does discuss Mr. Cruz Barrera's claim. It is not a copy and paste generalized country conditions. So he says that returning Cruz Barrera to El Salvador could likely result in his death. But where does he opine that the El Salvadorian government wouldn't do anything to protect him? Your Honor, this was a case-specific report that Dr. Borman crafted off of the testimony of Mr. Cruz Barrera. It was case-specific. He crafted it off of the declaration of Mr. Cruz Barrera, his father, and his brother. And that compiled with his firsthand expertise pertaining to the violence in El Salvador. He crafted his expert report. He furthermore states. Your Honor, I want to ask you a legal question related to this inability and unwillingness to control. That requirement is both part of the test for statutory withholding and for relief under the Convention Against Torture. Yes, Your Honor. However, we've talked about it slightly differently in our case law. And I'm just curious, after your review of the cases, do you see the unable and unwilling standard to be the same under both of those claims for relief, or are there differences? Under Convention Against Torture, it is more in the aggregate. Pursuant to the regulations for Convention Against Torture, it considers all evidence to the possibility of torture. But I'm focused on the unable and unwilling part of this, not the torture or whether conduct rises to the level of torture or  So we have case law in the CAT context that talks about lack of resources and just general ineffectiveness of a government or a legal system in a government can't rise to the level of inability, to inability such that you're acquiescing. Do you think that that's true in the withholding standard? Like what do we make of just a government's sort of ineffectiveness? Yeah, under CAT, it is more narrow, this inability or unwillingness to protect the victim. Okay. Your Honor, if I may briefly conclude. For the reasons stated, we respectfully request a grant of the petition for review and a remand of the board's decision. Thank you. Thank you. We'll hear from the government. Good morning, Your Honors. It may please the Court. Stephanie Groff for the Attorney General. Your Honors, let me first just clarify the question that you just asked. There is a significant difference between the standard for the government being unable and unwilling for withholding of removal and whether for CAT protection, the government or public official or other person acting in official capacity will acquiesce to that future or possible torture. And let me just clarify. While there is something called withholding of the removal of CAT protection, in the context here, what we're talking about is just pure withholding of removal. And what Mr. Cruz-Berra needed to show there, it's part of the definition of persecution, is that if he were to be removed, the Salvadoran government would be, as noted, unable or unwilling. As this Court has held on numerous occasions, that does not mean that one must be protected from all harm, that they have a duty to prevent harm, to intervene. Now, with CAT protection, it is a harder burden of proof to meet. Now, here he sought CAT protection, and with that, the CAT definition specifically states that one must show that it's more likely than not that they will be tortured if removed. And that torture definition includes the acquiescence element, stating that this significant amount of harm must be either by or with the acquiescence of a public official or other person acting in an official capacity. This Court has various case law that notes that acquiescence means that the public official or other person have knowledge of the harm that rises to level of torture beforehand and failed to intervene. And that's where, as you mentioned, Judge Forrest, the case law comes in about lack of finance for prisons. Are they actually attempting? Do they know about it? Is it really enough to constitute acquiescence? They're closing a blind eye to it. They are two very different standards, but importantly here, Mr. Cruz-Berrera has failed to meet his burden of proof for both of them. Let me first turn to unable and unwilling. Here the immigration judge looked at the evidence as a whole. Importantly, he noted on various instances in his oral decision that he considered the numerous country conditions evidence that was presented by Mr. Cruz-Berrera. However, the immigration judge noted that it is a case-by-case determination, and he needed to look specifically at not only the country of origin evidence, but what happened to Mr. Cruz-Berrera. Okay. Counsel, so what do we do with the statement on page 233? Sure, Your Honor. The statement that you pointed out with my friend on the other side, I will note that's not part of his oral decision. It was after the fact, letting the Mr. Cruz-Berrera know what happened. I would say that at this point, it is not in any indication that the immigration judge erred in his decision. Well, he may not, he may not err. I mean, he said this is a finding, and I'm not, nobody's challenging whether that's correct or not. We're trying to figure out what's the implications of saying in part. I don't know what to do with that. A big part, a little part, does it make a difference if it's? Well, Your Honor, I think what you can do with that is look to his specific oral decision where he addresses that it is a close call, that there is evidence of government corruption. The judge notes that there's evidence that Salvadoran officials have trouble controlling and handling it. But here, as noted, Mr. Cruz-Berrera's specific instance where he was harmed, which, albeit the government admits, is very tragic, and we are not challenging that at all. But after that, his persecutor, at least one of them, Antonio, was arrested. The police were involved. As far as we know, Ernesto, the witness, fled. There's no evidence that the government was unable to protect him or provide any protection or witness protection. That was never before the court. And ultimately, while Antonio was released, years later, when his brother, Mr. Cruz-Berrera's brother, got in an interaction with him, he ended up killing Antonio. So one of his main feared persecutors had passed, is gone. But with that, what the immigration judge looked at here was that Mr. Cruz-Berrera's brother, Mario, was arrested. He was tried. He was able to argue legal self-defense in this murder, and he was not convicted and able to be released. I think all of that is a strong argument for why unwillingness is not met here. I mean, I've seen lots of these kinds of cases, and sometimes the record is very clear that local authorities have no interest in helping someone. And that doesn't seem to be the case in this context. So the question is inability. Are the authorities able to protect this petitioner if he's returned to the country? And what we have here is people are fleeing for their lives. He has to be removed out of the hospital because there's threats there. Parents are moving. They're hiring private security. The brother gets into an interaction, and the only way he protects himself is to kill the person who's coming after him. Like, this doesn't seem like the family is getting a whole lot of protection from the government. And if they're not unwilling to do it, it suggests that maybe they just can't do it. And also unlike many cases that I've seen where you just sort of have generalized, you know, the society seems to be falling apart or whatever, this is a specific problem. There are discrete people that are having a conflict with this family. So perhaps we could expect a little bit more from authorities in being able to take some protective action. How do you react to all that? Well, yes, Your Honor, and the government acknowledges all of that. But I will just first point, before I answer your question, that the standard that this court needs to utilize is substantial evidence standard. These are factual findings, and the record needs to compel a contrary conclusion. This is a close case. There are – this is more unique than some that you, Judge Forrest, has mentioned are different where it's just generalized. There has been direct harm. There has been police interaction. But just because it's a close case does not mean that the record compels a contrary conclusion. Well, what do we – I mean, you go back to Judge Bybee's question about this one statement by the IJ. It's a close case, and the IJ says, well, in part, they can't protect him. Well, Your Honor, let me answer the question you asked previously. Here, what we do have is, yes, Mr. Cruz Barrera's family has moved. They've relocated. They hired private security. But when asked specifically, have they gone to the police to complain about any of the threats they received, he said, generally, on one occasion they have. We don't have evidence that they've actively sought protection, that there's active threats. It was only on one instance where a family member went back to the land and someone of Antonia's family was with a machete. It's unclear from this record if they went to the police, if they sought any protection. So, yes, while there is a willingness, the lack of inability or, in part, the judge's concern, he found that as the evidence as a whole, looking at it in the totality here, Mr. Cruz Barrera has not shown that they have an inability to protect him. That's a question I had for both sides. So, I mean, the assault upon Mr. Cruz Barrera occurred in 2011. The killing of the assailant by his brother occurred in 2014. Does the record provide any other dates as to these other allegations by the family that, you know, the machete incident with his sister? It all seems to blur together. Is the record clear about this? And then, to your point, it seems to me that a government's unable to protect someone, there's got to be a demonstration that they were aware of the fact, and then they were unable to protect them. And I'm not clear on the facts for either of this. Yes, Your Honor, and it is a bit ambiguous, and I'll note that it is Mr. Cruz Barrera's burden, and he didn't establish it below. But as far as the incident with the machete, I do believe that occurred after the fact Antonio was murdered by Mario. The record also shows, and my friends on the other side had argued in their brief, that when Mr. Cruz Barrera's sister went to the police years later, I believe maybe in 2017, although I need to check, the police had destroyed those records. It might have been 2019. Nonetheless, their argument was, you know, years later, the police destroyed the record. That shows an inability. However, what it shows is that years have passed. And while they are afraid for their life back at home based on Antonio and generalized claim and fear of the gangs, the judge stated that here, yes, there was a family dispute, but the fact that it's immediately and automatically connected to the gangs, as Dr. Borman's declaration opined, that is not what we have here. They have generalized fear. Well, they've had to go through other things. It had been years since this attack. Antonio has been killed. And there's nothing to show that the government, if he were to return, would be unable or have an inability to protect him. Well, there hasn't been any new evidence since 2019. That's because this case has been closed. But as I noted in the brief, there is significant country changes. And the evidence does note that. There has been a new president in El Salvador. The country conditions note that President Bukali is seeking to control gangs. There has been difference. And while this court does not need to remand to address it, what you need to look at is whether the record compels that contrary conclusion. While it may be close, the judge may have gone back and forth with it, it does not compel. You've said a couple of times there's no evidence that the government is unable to protect them. And I guess I'm wondering what evidence is there that they're able to, given all the circumstances that we've seen where there was no protection for many, you know, it's just not one incident. It's multiple. Yes, Your Honor. However, this court has held on various occasions that it's not that a government must prevent all risks of harm. Specifically, this court in Hussein versus Rosen stated that, yes, there may be inability, there may be unwillingness. But the concept that there must be perfect protection, that is not one that this court holds other countries to. In fact, the United States is not held to that. And there's various case law that notes that. For instance, in, I'm going to butcher this, Navrani v. Gonzalez in 2005, this court noted that the record didn't compel a conclusion there about unable and unwilling, because while he was harassed, while he was sought, the government actively tried to investigate, but was unsuccessful in resolving that matter. And the Ninth Circuit in that case and numerous others have held that that's not enough to compel a contrary conclusion if they express difficulty. And I do just want to turn to Dr. Borman's declaration. I think it's important for this court to have some context and clarity in what actually happened here, as my friends on the other side do mischaracterize the merits hearing a bit. Importantly, Mr. Cruz Brera during this time was detained. He had two specific merits hearings. He was able to testify. There was cross-examination. And at the conclusion of his testimony, the immigration judge started to address the case, noting both sides' arguments, and allowed both sides to present closing arguments. Specifically, this started on Administrative Record 220 to 222 with the Department of Homeland Security's closing. However, Mr. Cruz Brera's attorney noted and specifically stated that on page 224 that looking at Dr. Borman's evaluation, the government in El Salvador absolutely does not have the capacity to defend individuals. So Mr. Cruz Brera's attorney noted that for the immigration judge. Then the immigration judge stated, it's your burden to prove this. He acknowledged that it's a case-by-case determination and that the evidence showed that here the government was willing and able to help him based on all the numerous examples that I've mentioned with arresting. So in a case that you have told us very candidly, and I really appreciate the government coming and telling us, reminding us that this is a close case. Yes, Your Honor. In a close case, why wouldn't the IJ say, I have considered Dr. Borman's testimony, and for the following reasons I don't find that it is persuasive. It's too general. It doesn't apply in this particular case. This was a family-to-family. These are Hatfields and McCoys kind of a situation. Why wouldn't he at least mention it to complete the record? This is obviously a substantial piece of work on Dr. Borman's part. I understand. This may be something that the IJ and certainly the BIA has seen again and again and again with respect to El Salvador. And it may be that they're used to dealing with it, and it may be that they've discounted it in some way. But we need to look at this record. So why didn't the IJ mention it, and why isn't that a problem? Absolutely, Your Honor. And the government agrees that it is case-by-case for this court to look at it in this record. But what we have here in continuing in the closing, the immigration judge addressed and spoke with Mr. Cruzbearer's attorney. In fact, Mr. Cruzbearer's attorney then stated, if you look at the entire country of origin evidence, including Dr. Borman's declaration, she made that comment. Then the immigration judge went and issued his oral decision. And in the oral decision, while we note that he did not specifically state Dr. Borman's testimony or, sorry, Dr. Borman's declaration, the immigration judge on multiple instances said, I've considered the country of origin information noting corruption in El Salvador, which, as Mr. Cruzbearer's attorney mentioned a few minutes earlier, was what Dr. Borman had provided, country of origin evidence as it relates to the corruption and difficulties in controlling. In addition, for Convention Against Torture Protection, the regulation only states that the judge must consider the evidence in their totality. But country of origin, those are also the State Department reports. Yes, Your Honor. Which the I.J. should have considered. And we assume that he probably did. But the immigration judge here did consider it. And that's the difference. This Court's decision in Cole v. Holder specifically states that an immigration judge need not specifically go through every piece of evidence unless a noncitizen can show that it's probative or potentially dispositive. And as we noted in our brief, Dr. Borman's declaration is neither. It's neither probative nor potentially dispositive as to the outcome of this case. As you mentioned, Judge Bybee, a lot of it was generalized. Yes, that he does testify in a variety of cases. I noted in our brief that a lot of it does mimic the country of conditions evidence. The only aspects of Dr. Borman's declaration that discussed Mr. Cruzbearer's case were either legal conclusions or discussing issues that were not before the court. For instance, he opined on ability to relocate. That is not an issue here. And an expert cannot opine on legal conclusions. So the government is arguing that it was not legal error for the immigration judge to not mention Dr. Borman's specific declaration as the immigration judge here considered the evidence as a whole, looked at it at the totality, noted that it is a close call, but in this specific case, he found that he didn't meet his burden of proof. It's very — you know, you've got some very good reasons, some good basis for arguing that he can't opine on legal conclusions. I certainly would have liked to have heard that from the I.J. rather than from the government's attorney. Yes, Your Honor. And if I may just briefly answer that. I see my time is running up. The government acknowledges this. This may not be a perfect board — or perfect immigration judge decision. It was an oral decision. But this court has held that judges don't need to write exegesis on every piece of evidence. They don't need to go through every single piece. And this is not post hoc rationalizations. The board looked at it de novo as it was a legal error claim, and they made the correct decisions. And we ask that this court find that there was no legal error with Dr. Borman's declaration and that substantial evidence supports the ultimate conclusions. Thank you so much, Your Honors. Thank you, Counsel. We'll hear a rebuttal. Good morning, Your Honors. My name is Stephanie Wodnick, and I have two points on rebuttal. First, Dr. Borman's report was highly probative and potentially dispositive. And under this court's case law — What in the report was highly probative and potentially dispositive? Give me specifics. Yes, Your Honor. So, Mr. — excuse me, Dr. Borman has two conclusions about Mr. Cruz-Berrera. First, on 1126, he states, it is his professional opinion Mr. Cruz-Berrera would be at a high and predictable risk of egregious physical harm and death. Is that just a legal conclusion? No, Your Honor. That's his professional opinion. Looking at the totality of the evidence here and as well as Mr. Cruz-Berrera's specific case against the backdrop of the country conditions, showing that what is happening in El Salvador on a large scale is what is happening here in this specific case. And what was your second one? And the second one is on 1153, Your Honor. And he, you know, has the same opinion, but then additionally adds that the Salvadoran government will be unable or unwilling to provide even a modicum of protection to Mr. Cruz-Berrera if returned. Those are conclusory statements. Does he provide any basis to put me to the bones for his conclusions? Yes, Your Honor. Starting on 1126, Dr. Borman states, Mr. Cruz-Berrera and numerous members of his family have been targeted by MS-13 over the course of several years, and the only reasonable conclusion is that those threats remain active. He further states, the fact that Mr. Cruz-Berrera's brother Mario killed Antonio would exacerbate MS-13's rage by a factor of multiples and predicts How does that tie, though, to the government's unwillingness or inability to protect the family? Well, Your Honor, this comes in because, you know, if Antonio would have been brought to trial as he should have been, if the police would have What evidence? What evidence? The evidence that the police failed to show up to the hearing, the evidence that That's enough to convict somebody? A police comes by with a report and they say that a murder was committed and someone can get found guilty in El Salvador for that? I don't know if I understand your question, Your Honor. Would you repeat, please? Yeah, so the witnesses are gone. The victim is gone, the witness is gone. How was the El Salvadorian government and court system supposed to conduct a trial? Well, Your Honor, they had evidence, they had reports that they had taken from Ernesto and Ernesto would have been able to go there and testify against Antonio He's gone. He was gone, Your Honor, and the evidence in the record and according to Mr. Cruz-Berrera's credible testimony, which was found credible by the IJ and under a lot of the INS should be taken as true under that standard. He testified that he found out that Ernesto they had not protected him under a code name and therefore Ernesto had fled because he was also receiving threats from MS-13. So when we look at the totality of the evidence here, we're looking at the police failing to to show up to the hearing to testify against Antonio. We see Ernesto failing to appear. We see destruction of records. We see continued death threats. We see that Antonio had to attack and kill. Continuing death threats. Is there anything in the record to indicate when these threats were made and whether they were reported to the El Salvadorian government? Your Honor, we do not have specific dates as to when those happened. To my knowledge and under Mr. Cruz-Berrera's declaration, he was told a couple of years after the fact that these threats had been coming in that the family was continuing to be threatened. So we know that this happened after Antonio was murdered. And we know that the family has continued to receive threats such that they have relocated twice within El Salvador and have hired private security guards. I know all that, but I mean, how does the El Salvadorian government know that all this is occurring? Have they reported it to authorities and the authorities have ignored them? From my knowledge, Your Honor, Mr. Cruz-Berrera's declaration states that his family did go to the police with this information and the police did nothing in response to those threats. And so, you know, I'm not aware that the family has continued to go back, but they have felt scared enough to relocate twice and hire private security guards. Your Honors, going off of that point, El Salvador has an inability to protect Mr. Cruz-Berrera. And this is reviewed under a de novo standard, which comes from Wilkinson v. Garland, which states that the question of whether a government is unable or unwilling to protect a persecutor is an example of a mixed question of law and fact. And under Mendoza-Pablo v. Holder, mixed questions of law and fact are reviewed de novo. But even if we look at this under a substantial evidence standard, we still win because the totality of the evidence shows that Mr. Cruz-Berrera was harmed grievously and the Salvadoran government was unable or unwilling to protect him from that harm. Your Honors, I see I'm out of time. If I may briefly conclude for all these reasons. I have one question for you. So if this was remanded, I mean, it's going to be remanded for what purposes? What is the immigration judge going to hear new that it hasn't already heard? Your Honor, well, I would assume that that would depend on what type of instructions you would send the case back. But at minimum, the IJ needed to acknowledge Dr. Borman's report. He left it hanging. It was an issue that he did not come back to when he specifically stated that he would. And under this Court's case law, as well as the federal regulations, he was required to mention that piece of evidence, and he failed to do so. So at minimum, he needs to acknowledge that he viewed Dr. Borman's report and considered that in his decision. Your Honors, for the foregoing reasons, we respectfully request this Court grant the petition and remand the case. Thank you. All right, thank you, Counsel, for the helpful argument in this case. And I will just briefly note the Court's gratitude to the clinic at the University of Idaho for taking on this case as part of our pro bono program, and, of course, a personal point of pride for me, given that this is my alma mater here doing service for the Court. So thank you very much.
judges: BYBEE, FORREST, Rodriguez